FRANK JOHN MOTTO, JR.,        )
                                         )
              Plaintiff,           )           2:19-cv-00081-DCLC-CRW
                                         )
        vs.                     )
                                         )
VINCE MULLINS, et al.,         )
                                         )
            Defendants.      )

## MEMORANDUM OPINION AND ORDER

Defendants Vince Mullins, Lieutenant Robert Greer, Major Cheryl Sanders, Colonel Dereck Stewart, and Governor Bill Lee filed a Motion to Dismiss [Doc. 35] and supporting memorandum [Doc. 36] pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff filed a response [Doc. 44]. This matter is now ripe for resolution. For the reasons that follow, Defendants' Motion to Dismiss [Doc. 35] is **GRANTED**. Defendant Vince Mullins, in his individual capacity, did not seek dismissal with respect to Plaintiff's claims alleging violations of the Fourth and Fourteenth Amendments nor the common law claims of false imprisonment/false arrest and intentional infliction of emotional distress. Therefore, those remaining claims are not dismissed by this Court's order.

## I.    BACKGROUND

On May 1, 2018, Frank John Motto Jr. ("Motto"), an over-the-road truck driver, was stopped by Tennessee State Trooper Vince Mullins ("Mullins") for weaving within his lane. [Doc. 32, p. 4]. Mullins requested Motto's paperwork, conducted a visual inspection of the truck, and advised him that he was going to write him a citation. [*Id.*]. During the stop, Mullins asked Motto why his eyes were red and accused him of being intoxicated on methamphetamine. [*Id.*]. Mullins

1

then conducted field sobriety tests, during which Motto had trouble standing on one foot. [*Id*.].

Motto contends that he had no trouble touching his finger to his nose with his eyes closed, but he

had trouble standing on one foot due to weakness from an ankle injury, his current weight being

over 250 pounds, and his health problems of high blood pressure and diabetes. [*Id*.]. During the

stop, Motto asked to check his blood sugar and blood pressure and to speak to a supervisory officer

but Mullins denied these requests. [*Id*. at p. 5]. Mullins arrested Motto, handcuffed him with his

hands behind his back, and placed him in the back of the squad unit for approximately 90-120

minutes. [*Id*.]. Motto asked Mullins to adjust the handcuffs because they were digging into his

tendons, but Mullins ignored him and he began experiencing loss of feeling in his hands. [*Id*.].

Motto also experienced further pain to his wrists during the ride to the hospital, because Mullins

drove erratically while Motto struggled to maintain his balance. [*Id*.].

At the hospital, Motto requested a medical examination, but Mullins told hospital staff that

Motto was intoxicated on methamphetamine and insisted that he be given only a blood test. [*Id*. at

p. 5–6]. Approximately 40-60 minutes after arriving at the hospital, Motto was allowed to see the

emergency room doctor. [*Id*. at p. 6]. His vitals indicated that his blood pressure was 179/103, his

heart rate was 143, and his blood sugar was 266, all elevated higher than normal. [*Id*.].

Approximately 45 minutes later, Mullins was informed by the doctor that Motto tested negative

for any drugs, narcotics, or illegal substances. [*Id*.]. Mullins then made two telephone calls, spoke

with hospital staff, and placed Motto back in the squad unit. [*Id*.]. Mullins made another phone

call before uncuffing Motto. [*Id*.]. Mullins got back into the squad unit, informed Motto that it

was his "lucky day," and drove Motto to Casper's impound lot where he unrolled the back window

and told Motto to let himself out. [*Id*.]. As a result of his detainment by Mullins, Motto incurred

a towing bill, a charge for the vet clinic where his dog was placed by the towing company, and hospital bills. [*Id*. at p. 7].

Based on these facts, Motto filed a Complaint in this Court on April 8, 2019 [Doc. 1] and an Amended Complaint on July 26, 2019 [Doc. 32], under 42 U.S.C. § 1983, alleging Fourth, Fifth, and Fourteenth Amendment violations against all Defendants and common law claims of false imprisonment/false arrest, intentional infliction of emotional distress, negligence, and negligent training/supervision and respondeat superior against all Defendants. Motto named as Defendants Trooper Vince Mullins, Colonel Dereck Stewart, Major Cheryl Sanders, Lieutenant Robert Greer, Governor Bill Lee, the State of Tennessee, and the Tennessee Highway Patrol ("THP"). For relief, Motto seeks $500,000 in compensatory damages, $1,000,000 in punitive damages, and $500,000 in special damages against each Defendant. [*Id*. at p. 13].

Defendants Mullins, Greer, Sanders, Stewart, and Lee filed the Motion to Dismiss [Doc. 35] and supporting memorandum [Doc. 36] that is currently before the Court in which Defendants seek dismissal of several of Motto's claims. Defendants assert (1) any claims against Defendants Lee, Mullins, Greer, Sanders, and Stewart in their official capacities are barred by the Eleventh Amendment; (2) Motto has failed to state a claim against Defendants Lee, Stewart, Greer, and Sanders in their individual capacities; (3) this Court lacks jurisdiction to hear Motto's common law negligence claim; and (4) Motto has failed to state a claim under the Fifth Amendment. The Court will now address each of these grounds as raised by Defendants.

## II.    LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) requires the Court to construe the allegations in the complaint in the light most favorable to the plaintiff and accept all the complaint's factual allegations as true. *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990).

However, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and to "state a claim to relief that is plausible on its face." *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Ashcroft*, 556 U.S. at 679, and may dismiss the complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

## III.     ANALYSIS

### A.     Official-Capacity Claims

#### 1.     Governor Lee

"A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Thus, any claims against Governor Lee in his official capacity are equivalent to claims against the State itself. Under the Eleventh Amendment, states have immunity from suit in federal court. U.S. Const., amend. XI. There are three exceptions to this immunity—(1) when the state waives immunity by consenting to the suit; (2) when Congress expressly abrogates the states' sovereign immunity; or (3) when the doctrine set forth in *Ex parte Young* applies. *Boler v. Early*, 865 F.3d 391, 410 (6th Cir. 2017).

Motto asserts that the State of Tennessee and THP are responsible for negligent training and supervision of THP officers or, alternatively, through the doctrine of respondeat superior and that when a state is the defendant, the Governor represents the state. While it is true that a suit against the State is, in form, a suit against the Governor in his official capacity, this does not remove Eleventh Amendment immunity. *Ex parte Ayers*, 123 U.S. 443, 491 (1887). In this case,

none of the exceptions to this immunity apply. First, the State has not waived immunity by consenting to the suit. Second, the Supreme Court has held that Congress did not intend to abrogate the states' Eleventh Amendment immunity in enacting Section 1983. *Quern v. Jordan*, 440 U.S. 332, 342 (1979). Finally, the doctrine of *Ex parte Young* provides that the Eleventh Amendment does not bar prospective relief against a state official in his official capacity to prevent future federal constitutional or statutory violations. *Ex parte Young*, 209 U.S. 123 (1908). That doctrine does not apply here because Motto is seeking monetary relief rather than prospective relief to prevent future constitutional or statutory violations. Therefore, Motto has failed to state a claim for relief against Governor Lee in his official capacity.

### 2. Defendants Mullins, Greer, Sanders, and Stewart

Defendants assert that Mullins, Greer, Sanders, and Stewart in their official capacities are not "persons" under Section 1983. Motto asserts that the officials are either liable for the conduct of Mullins through the doctrine of respondeat superior or that they are stripped of their representative character and subjected in their person to consequences of their individual conduct. Respondeat superior and individual-capacity claims under Section 1983 are discussed below.

As for the official-capacity claims, Section 1983 authorizes assertion of a claim for relief against a "person" who acted under color of state law. *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1244 (6th Cir. 1989). "Although 'state officials literally are persons,' an official capacity suit against a state officer 'is not a suit against the official but rather is a suit against the official's office.'" *Hafer v. Melo*, 502 U.S. 21, 26 (1991) (quoting *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)). Therefore, "neither a state nor its officials acting in their official capacities are 'persons' under Section 1983." *Godsey v. Tennessee Highway Patrol*, No. 3:05 CV 124, 2005 WL 1840248, at *2 (E.D. Tenn. Aug. 2, 2005). Defendants are all state officials—

Mullins is a Trooper with the THP, Greer is a Lieutenant with the THP District Five Headquarters, Sanders is a Major with the THP Field Operations Bureau, and Stewart is a Colonel with the THP Administration Office. An official capacity suit against Defendants is a suit against THP; therefore, a suit against the State of Tennessee. As a result, Defendants Mullins, Greer, Sanders, and Stewart, in their official capacities, are not "persons" within the meaning of Section 1983.

Even if Defendants in their official capacities were "persons" within the meaning of Section 1983, the claims would be barred by Eleventh Amendment immunity. As discussed above, a suit against a state agency or an individual in his official capacity is a suit against the state itself. *Puckett v. Lexington-Fayette Urban Cty. Gov't*, 833 F.3d 590, 598 (6th Cir. 2016). Because no exceptions to Eleventh Amendment immunity apply, Motto has failed to state a claim for relief against Mullins, Greer, Sanders, and Stewart in their official capacities.

### B. Individual-Capacity Claims

Motto asserts that these Defendants are liable under the doctrine of respondeat superior or, alternatively, they are stripped of their representative character and subject to liability as individuals. Unlike official-capacity suits, the Eleventh Amendment does not grant immunity when a Section 1983 claim is asserted against a state official as an individual. *Hafer*, 502 U.S. at 30-31. An individual-capacity suit "seek[s] to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 163 (1985). Thus, "[a] plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft*, 556 U.S. at 676. Government officials may not, therefore, be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Id.*

To hold a supervisor liable under Section 1983, "[t]here must be a sufficient causal link or nexus between the supervisor's wrongful conduct and the violation of the plaintiff's federally protected right." *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003). A supervisor is not liable for failing to train a subordinate unless the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). At a minimum, a plaintiff must allege facts that the supervisor "at least implicitly authorized, approved, or knowingly acquiesced in" the constitutional violation. *Id.*

The facts as Motto portrays them do not support a claim that these Defendants' own individual actions violated the Constitution. Motto does not provide any facts that these Defendants encouraged or in some other way directly participated in Motto's conduct on May 1, 2018. In fact, Governor Lee was not sworn in until January 19, 2019, and Stewart was not a Colonel with the THP until June 1, 2018. Nor does Motto establish facts to support a sufficient causal link or nexus between Defendants' wrongful conduct and violations of Motto's federally protected rights. Motto also does not provide any facts to at least support the contention that Defendants implicitly authorized, approved, or knowingly acquiesced in any constitutional violations by Mullins. Motto makes no specific allegations against Defendants Lee, Stewart, Greer, or Sanders. In general terms, he argues that all Defendants are responsible for the actions of those who serve under them; therefore, Motto's conduct is "attributable to all Defendants." These types of general allegations are insufficient to support a failure-to-train claim made against an official. *Id.* Accordingly, Motto has failed to state a claim for relief against Defendants Lee, Greer, Sanders, and Stewart in their individual capacities.

### C. Motto's Common Law Claim of Negligence

Defendants assert that, pursuant to Tenn. Code Ann. § 9-8-301 *et seq.*, the Tennessee

Claims Commission has exclusive jurisdiction to hear Motto's claims of negligence and that this Court must dismiss the negligence claims. Additionally, Defendants contend that, pursuant to Tenn. Code Ann. § 9-8-307(h), they are absolutely immune from liability for negligence. The Tennessee Claims Commission has exclusive jurisdiction over monetary claims, including but not limited to, claims arising from the "negligent care, custody and control of persons" brought against the State of Tennessee. Tenn. Code Ann. § 9-8-307. The Claims Commission was created to waive the State's sovereign immunity and provide "claimants with a cause of action—and a deep pocket—that they would not otherwise be able to pursue." *Haley v. Univ. of Tennessee–Knoxville*, 188 S.W.3d 518, 524 (Tenn. 2006). In exchange, a "strict election of remedies requirement" is imposed. *Id*. Once a plaintiff files a claim with the Claims Commission, the plaintiff waives all other causes of action against any state officer based on the same act or omission. *Id*. The Sixth Circuit, examining a similar provision of Ohio state law, held that:

> The Ohio statute gives claimants an option not otherwise available to them, and any claimant who does not like the statutory option is perfectly free to reject it and prosecute a § 1983 action against the state's officials just as if the Court of Claims Act [equivalent of Tennessee Claims Commission Act] had never been passed.

*Estate of Drew v. U.T. Reg'l Med. Ctr. Hosp.*, 121 F.3d 707 (6th Cir. 1997) (quoting *Leaman v. Ohio Dep't of Mental Retardation & Dev. Disabilities*, 825 F.2d 946, 953 (6th Cir. 1987)). The court further held that the action "may be maintained either in federal court or in an Ohio court of common pleas, without any necessity of filing an action in the Court of Claims." *Id*. Therefore, Defendants' assertion that Motto's negligence action must be filed with the Tennessee Claims Commission is misplaced. Rather, Motto had the choice "between the administrative proceeding provided by the Claims Commission and a lawsuit in federal court." *Id*. (citing *White by Swafford v. Gerbitz*, 860 F.2d 661, 663 (6th Cir. 1988)). Because jurisdiction is appropriate, the Court now turns to Defendants' assertion of absolute immunity.

Tenn. Code Ann. § 9-8-307(h) provides state officials absolute immunity from liability for "acts or omissions within the scope of the officer's . . . office, except for willful, malicious, or criminal acts or omissions done for personal gain." *Purisch v. Tenn. Tech. Univ.*, 76 F.3d 1414, 1421 (6th Cir. 1996). This immunity applies to state-law claims filed in federal as well as state court. *Walker v. Norris*, 917 F.2d 1449, 1459 (6th Cir. 1990). Defendants, state employees under Tenn. Code Ann. § 8-42-101, were acting within the scope of their employment at all times relevant to the current action. Therefore, Defendants are absolutely immune from suit for any negligence and Motto has failed to state a viable negligence claim against Defendants in their individual capacities.

### D.  Motto's Fifth Amendment Claim

The Fifth Amendment to the United States Constitution provides that no person shall "be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." U.S. Const., amend. V. The Fifth Amendment limits the power of the federal government and the Fourteenth Amendment secures the application of the Fifth Amendment to state governments. *Malloy v. Hogan*, 378 U.S. 1, 8, 26 (1964). Motto's due process claim under the Fifth Amendment fails "because the Fifth Amendment applies to the federal government, not state or local governments . . . ." *Myers v. Village of Alger, Ohio*, 102 Fed. Appx. 931, 933 (6th Cir. 2004). None of the Defendants acted on behalf of the federal government; thus, they cannot incur liability under the Fifth Amendment. *Thomas v. Fayette Cty.*, No. 16-2801-JTF-DKV, 2016 WL 11249102, at *7 (W.D. Tenn. Dec. 19, 2016), report and recommendation adopted, No. 2:16-CV-2801-JTF-DKV, 2017 WL 544600 (W.D. Tenn. Feb. 10, 2017). Motto's claim is better construed as brought under the Fourteenth Amendment. Therefore, Motto has failed to state a claim against Defendants for violation of the Fifth Amendment.

9

**IV.     CONCLUSION**

Accordingly, for the reasons stated herein, Defendants' motion to dismiss is **GRANTED**. Any and all claims against Governor Lee, Lieutenant Greer, Colonel Stewart, and Major Sanders in their individual and official capacities, any and all claims against Mullins in his official capacity, the common law claim of negligence, and any claims for violations of the Fifth Amendment are **DISMISSED**.  The remaining claims are as follows: any claims asserting Fourth or Fourteenth Amendment violations against Mullins in his individual capacity; the common law claim of false imprisonment/false arrest against Mullins in his individual capacity, and the common law claim of intentional infliction of emotional distress against Mullins in his individual capacity.

SO ORDERED:


s/ Clifton L. Corker
United States District Judge